IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID POOLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 13-cv-4984 |
| | ) |
| MICHELLE R. B. SADDLER, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff David Poole is an incarcerated patient at the Chester Mental Health Facility in Chester, Illinois. (R. 1, Compl. ¶ 4.) Plaintiff asserts Section 1983 claims against thirty-six individuals and state entities related to their alleged mistreatment of Plaintiff at the Chester Mental Health Facility, the Pontiac Correctional Facility, and the Menard Correctional Facility. The Court has three motions pending before it. First, Plaintiff moves for the Court to order the Illinois Department of Human Services to relocate Plaintiff to a mental health facility near Chicago pending the outcome of this litigation. (R. 10, Mot. to Relocate.) Second, Defendants Todd Loss, Michelle Saddler, Salvador Godinez, Donald Jones, Travis Nottmeier, Christopher Roberts, and Jared Brooks (the "Moving Defendants") move to dismiss Plaintiff's claims against them and to transfer the case to the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). (R. 19, Mot. to Dismiss.) Third, in response to the Moving Defendants' motion to dismiss, Plaintiff moves for leave to file a proposed Amended Complaint. (R. 29, Mot. to Amend.) For the following reasons, the Court denies Plaintiff's motion to relocate (R. 10), grants the Moving

Defendants' motion to dismiss but denies their motion to transfer venue (R. 19), and denies Plaintiff's motion for leave to amend (R. 29).

## BACKGROUND

The State of Illinois, through its Department of Corrections ("IDOC") and Department of Health Services ("IDHS"), has held Plaintiff in a number of correctional and mental health facilities since at least 1977. (*See* Compl. ¶¶ 17-20.) Plaintiff served time at the Pontiac Correctional Center from 1977 to 1979 (*id.* ¶¶ 17-18) and at the Menard Correctional Facility from 1979 to 1982. (*Id.* ¶ 19.) From around 1990 to 1995, Plaintiff was a patient at the Elgin Mental Health Facility. (R. 29-1, Proposed First Am. Compl. ¶ 24.) Plaintiff is now a patient at the Chester Mental Health Facility in southern Illinois. (*Id.*)

Plaintiff alleges that during his incarceration at Menard Correctional Facility, "he was incorrectly diagnosed with a mental illness, [and] then force-medicated to treat it." (Compl. ¶ 19.) Plaintiff's forced-medication allegedly caused him to develop a dependency on the medications administered to him. (*Id.*) According to Plaintiff, "[h]is treatment while at the Menard Correctional Facility followed him to various mental institutions which continued to treat the plaintiff for his forced-medication induced mental illness. To this day, [Plaintiff] is subjected to demeaning treatment and abuse stemming from an incorrect initial diagnosis." (*Id.* ¶ 20.) Plaintiff pleads that "years of initially unneeded psychotropic drug therapy" caused him to get into confrontations with other residents at the Chester Mental Health Facility and left him susceptible to physical attacks, sexual harassment, and mental abuse from residents and facility employees. (*Id.* ¶¶ 21-48.) Plaintiff alleges several examples of abuse he purportedly suffered at Chester Mental Health Facility over the last ten years. (*Id.*)

Based on these allegations, Plaintiff asserts fifteen counts against thirty-six Defendants: (i) seven counts for violations of 42 U.S.C. § 1983 against twenty-eight current or former employees of the IDOC, Chester Mental Health Facility, Menard Correctional Facility, and Pontiac Correctional Facility, in their individual capacities (Counts II-VII and XV); (ii) four counts of *respondeat superior* liability against Menard Correctional Facility, Pontiac Correctional Facility, Chester Mental Health Facility, and Chester Mental Health Facility's superintendent (Counts I and IX-XI); (iii) one count for conspiracy to interfere with Plaintiff's right to be free from cruel and unusual punishment against all Defendants (Count VIII); and (iv) and three counts adding the State of Illinois, the IDOC, and the IDHS as necessary parties pursuant to 745 ILCS 10/9-102 (Counts XII-XIV). The seven Moving Defendants move to dismiss Counts IX-XIV for lack of subject-matter jurisdiction, Counts VII-VIII for failure to state a claim, and Counts II-VI and IX-XIV as barred by the statute of limitations. (R. 19.) Additionally, the Moving Defendants move to transfer this case to the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). (*Id.*)

Plaintiff did not file a response brief opposing the Moving Defendants' motion to dismiss and transfer venue. Rather, on the deadline for his response brief, Plaintiff moved for leave to file a proposed Amended Complaint, which, according to Plaintiff, addresses several of the issues raised in the Moving Defendants' motion. (*See* R. 29.) Plaintiff also has moved for the Court to order the IDHS to relocate Plaintiff to a mental health facility near Chicago pending the outcome of this litigation. (R. 10.)

## ANALYSIS

I.      **The Moving Defendants' Motion to Dismiss**

The Moving Defendants seek dismissal of (i) all claims against Defendants Saddler, Godinez, and Jones pursuant to Rule 12(b)(6), (ii) all claims against the State of Illinois, the IDHS, the IDOC, Pontiac Correctional Facility, Menard Correctional Facility, and Chester Mental Health Facility based on sovereign immunity, and (iii) all claims and allegations based on acts or omissions that occurred outside the statute of limitations period. (R. 20, Defs. Mem. at 5-10.)

   A.      **Legal Standard**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly,* 550 U.S. 544, 555, 126 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011).

### B. Motion to Dismiss Claims Against Defendants Saddler and Godinez

In Count VIII, the only count naming Saddler and Godinez as Defendants, Plaintiff asserts that Saddler and Godinez, in their individual capacities, conspired with other Defendants to interfere with Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (*See* Count VIII.) Section 1983 imposes civil liability upon "person[s]" who "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983; *see also Parker v. Franklin Cnty. Cmty. Sch. Corp.,* 667 F.3d 910, 925 (7th Cir. 2012) ("A cause of action under § 1983 requires a showing that the plaintiff was deprived of a right secured by the Constitution or federal law, by a person acting under color of law." (emphasis and internal quotations omitted)). To plead a Section 1983 conspiracy claim, a plaintiff must allege that (1) the individuals at issue reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individuals were willful participants in joint activity. *See Lewis v. Mills,* 677 F.3d 324, 333 (7th Cir. 2012); *Logan v. Wilkins,* 644 F.3d 577, 583 (7th Cir. 2011).

The Complaint contains no allegations linking Saddler or Godinez to the alleged conspiracy to deprive Plaintiff of his constitutional rights. With respect to Saddler, Plaintiff alleges that Saddler is the secretary of the IDHS (Compl. ¶ 5) and that throughout her time as secretary, Saddler "failed to put into place policies that would protect the patients in her charge from abuse by the individuals who work for her." (*Id.* ¶ 49.) Plaintiff's sole allegation with respect to Godinez is that he is the director of the IDOC. (Compl. ¶ 6.) These allegations fail to establish that Saddler and Godinez reached an understanding with each other or other Defendants

to deprive Plaintiff of his constitutional rights and that Saddler and Godinez willfully participated in joint activity with their alleged co-conspirators.

Even if the Court assumes, based on their positions, that Saddler and Godinez had some form of supervisory authority over other Defendants, the mere exercise of supervisory authority over individuals who allegedly violated Plaintiff's rights is insufficient to create Section 1983 liability. *See Kelly v. Municipal Courts of Marion Cnty.,* 97 F.3d 902, 909 (7th Cir. 1996); *see also Matthews v. City of E. St. Louis,* 675 F.3d 703, 708 (7th Cir. 2012). For a supervisor to incur individual liability under Section 1983, he or she "must know about the [alleged] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Matthews,* 675 F.3d at 708 (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992-93 (7th Cir. 1988)); *Backes v. Village of Peoria Heights,* 662 F.3d 866, 870 (7th Cir. 2011). Furthermore, "one can[not] infer a supervisor's participation in a conspiracy simply on the basis of his supervisory position." *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1256 (7th Cir. 1984) (citing *Rizzo v. Goode,* 423 U.S. 362, 96 S. Ct. 598, 46 L.Ed.2d 561 (1976)), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005); *Beaman v. Souk,* --- F. Supp. 2d ---, 2014 WL 31810, at *16 (C.D. Ill. Jan. 3, 2014) ("[A] person's supervisory position cannot be the basis for an inference that he was involved in the conspiracy."). Plaintiff, therefore, fails to allege facts that state plausible Section 1983 claims against Saddler and Godinez, either individually or as part of a conspiracy. Accordingly, the Court grants the Moving Defendants' motion to dismiss Plaintiff's claims against Saddler and Godinez without prejudice.[1]

---

[1] Paragraph 71 of the Complaint alleges a purported conspiracy among individuals not involved in this case to interfere with a restaurant's business by harassing potential customers. (Compl. ¶ 71.) This allegation is irrelevant to the issues in this case and appears to have been inadvertently included in the Complaint. The Court, therefore, *sua sponte* strikes paragraph 71 from the Complaint. *See* Fed. R. Civ. P. 12(f)(1).

### C. Motion to Dismiss Claims Against Defendant Jones

Plaintiff alleges that Defendant Jones, an IDOC employee, violated Plaintiff's Fourteenth Amendment right to due process by failing to provide all Plaintiff's medical records with the IDOC in response to Plaintiff's Freedom of Information Act ("FOIA") request. (*See* Compl. ¶¶ 13, 30-31, 50(g).) Plaintiff alleges that he submitted a FOIA request for his medical records to the IDOC in order to substantiate his allegations of forced-medication and physical and mental abuse. (*Id.* ¶¶ 30-31.) In response to Plaintiff's request, the IDOC provided Plaintiff's medical records with the IDOC dating back to 1985, but no records from before 1985, "despite the fact that IDOC Administrative Directive 04.03.100 requires discharged inmate medical records to be permanently stored in the Records Office." (*Id.* ¶ 30.) Plaintiff asserts two claims against Jones, in his individual capacity, based on these allegations: (1) a Section 1983 claim for violation of his Fourteenth Amendment right to due process (Count VII); and (2) a Section 1983 conspiracy claim alleging that Jones conspired with other Defendants to violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment (Count VIII).

Plaintiff's Section 1983 conspiracy claim against Jones fails for the same reason as his conspiracy claim against Saddler and Godinez fails—*i.e.,* because the Complaint lacks any allegations linking Jones to a purported conspiracy to violate his constitutional rights. *See Lewis,* 677 F.3d at 333; *Logan,* 644 F.3d at 583. Furthermore, Plaintiff cannot state an individual Section 1983 claim against Jones based on his alleged FOIA violation. The Illinois FOIA—not the federal FOIA—governs Plaintiff's request for records from an Illinois state agency like the IDOC. *See* 5 ILCS 140/2(a) (defining "public body" under the Illinois FOIA); 5 U.S.C. § 552(f) (defining "agency" under the federal FOIA). Because "[s]tate law cannot be enforced through § 1983," *Bond v. Atkinson,* 728 F.3d 690, 693 (7th Cir. 2013) (citing *Archie v. Racine,* 847 F.2d

7

1211, 1215-18 (7th Cir. 1988)), Plaintiff's Section 1983 claim based on a violation of the Illinois FOIA fails. Moreover, the Illinois FOIA, like the federal FOIA, creates a comprehensive remedial scheme, which also precludes liability under Section 1983. *Cf. Moorer-Bey v. Federal Bureau of Prisons,* No. 12-212-GPM, 2012 WL 1409500, at *5 (S.D. Ill. Apr. 22, 2012) (collecting cases); *Neff v. Walker,* No. 09 0386, 2009 WL 498071, at *1 n.1 (D.C. Feb. 26, 2009) ("The comprehensive nature of the federal FOIA forecloses a claim against individuals under § 1983." (citation omitted)); *Barger v. FBI,* No. 1:13-cv-00535, 2013 WL 6173781, at *2 (E.D. Cal. Nov. 21, 2013) ("[T]he FOIA provides a comprehensive remedial scheme for alleged violations, and Plaintiff can pursue a remedy directly under FOIA."). The Court, therefore, dismisses Counts VII and VIII against Jones with prejudice.

### D. Motion to Dismiss Claims Against the State of Illinois and State Agencies

The Moving Defendants move to dismiss all claims against the State of Illinois, the IDHS, the IDOC, Menard and Pontiac Correctional Facilities, and Chester Mental Health Facility on the basis of sovereign immunity.[2] (Defs. Mem. at 7-9.) Under the Eleventh Amendment, states are immune from suits in federal courts unless the state consents to the suit or Congress has abrogated the states' immunity through legislation. *See McDonough Assocs., Inc. v. Grunloh,* 722 F.3d 1043, 1049 (7th Cir. 2013); *Tucker v. Williams,* 682 F.3d 654, 658 (7th Cir. 2012). A state's sovereign immunity under the Eleventh Amendment extends to state agencies, as "arms of the state," and state officials acting in their official capacities. *See Joseph v. Board of Regents of Univ. of Wis. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005) (citing *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 76, 109 S. Ct. 2304, 105 L. Ed. 2d (1989)).

---

[2] Plaintiff asserts claims against Menard Correctional Facility, Pontiac Correctional Facility, and Chester Mental Health Facility for *respondeat superior* liability (Counts IX-XI) even though he has not named them as Defendants in this action.

Because Section 1983 does not abrogate the states' sovereign immunity, *see id.* (citing *Quern v. Jordan,* 440 U.S. 332, 341-45, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)), the Eleventh Amendment bars Plaintiff's claims against the State of Illinois and its agencies—the IDHS and the IDOC. *See, e.g., Thomas v. Illinois,* 697 F.3d 612, 613-14 (7th Cir. 2012) (affirming dismissal of Section 1983 claims against the State of Illinois and the IDOC); *Weston v. Illinois Dept. of Human Servs.,* 433 Fed. App'x 480, 482 (7th Cir. 2011) ("As a state agency, IDHS . . . is immune from a suit for damages under the Eleventh Amendment . . . ." (citations omitted)); *Glispie v. Illinois Dept. of Corrections,* No. 12-2060, 2012 WL 6761522, at *1 (C.D. Ill. Oct. 24, 2012) (dismissing Section 1983 claim against the IDOC); *Spain v. Elgin Mental Health Ctr.,* No. 10 CV 1065, 2011 WL 1485285, at *4 (N.D. Ill. Apr. 18, 2011) ("IDHS is entitled to dismissal both because it is not a 'person' amenable to suit under §§ 1982 and 1983 claims, and because the Eleventh Amendment grants it sovereign immunity."). Plaintiff's contention that the State, the IDHS, and the IDOC are necessary parties to this action does not allow Plaintiff to thwart the State's sovereign immunity. *See Republic of Philippines v. Pimentel,* 553 U.S. 851, 866-67, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008) (holding that a litigant may not join an entity entitled to sovereign immunity as a necessary party); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 327 F. Supp. 2d 995, 1000-01 (W.D. Wis. 2004) ("The principle of sovereign immunity overrides plaintiffs' interests in suing."); *Gottlieb v. Krozel,* No. 12 C 3902, 2013 WL 4565431, at *3 (N.D. Ill. Aug. 26, 2013) ("The fact that a litigant wishes to obtain relief from a state defendant does not, by itself, allow him to avoid sovereign immunity."); *see also Stoner v. Wisconsin Dept. of Agric., Trade & Consumer Prot.,* 50 F.3d 481, 483 (7th Cir. 1995) ("Case law in this Circuit has rejected the notion . . . that a state which chooses to indemnify its employees for damages threatens its Eleventh Amendment immunity from suit.").

The Court, therefore, dismisses Plaintiff's claims against the State of Illinois, the IDHS, and the IDOC with prejudice.

Furthermore, even if Plaintiff had properly named Menard Correctional Center, Pontiac Correctional Center, and Chester Mental Health Facility as Defendants (*see* note 2, *supra*), the Eleventh Amendment would bar claims for money damages (but not injunctive relief) against them. *See Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 427 (7th Cir. 1991) ("The prison is insulated from suit by the Eleventh Amendment, . . . and so was properly dismissed." (citation omitted)). Those claims also would fail for the separate reason that the facilities are not "persons" within the meaning of Section 1983. *See Adams v. Smith,* No. 13-cv-985-JPG, 2013 WL 5698861, at *2 (S.D. Ill. Oct. 18, 2013) ("[T]he Menard Correctional Center is not a 'person' within the meaning of the Civil Rights Act, and shall be dismissed from this action."); *Johnson v. Vienna Correctional Ctr.,* No. 13-cv-697-GPM, 2013 WL 5436267, at *1 (S.D. Ill. Sept. 30, 2013) ("[T]he Vienna Correctional Center, which is a division of the Illinois Department of Corrections, is not a 'person' within the meaning of the Civil Rights Act, and is not subject to a § 1983 suit."). Accordingly, the Court dismisses Counts IX-XI with prejudice.

### E.  Motion to Dismiss Claims Based on the Statute of Limitations

The Moving Defendants move to dismiss Counts II-VI and Count VIII, in full or in part, as untimely. (Defs. Mem. at 9-10.) Although the Federal Rules of Civil Procedure do not require a plaintiff to plead facts in the complaint to anticipate and defeat affirmative defenses, "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *See Independent Tr. Corp. v. Stewart Info. Servs. Corp.,* 665 F.3d 930, 935 (7th Cir. 2012) (citing *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009)); *Logan,* 644 F.3d at 582. "[I]n § 1983 actions, federal courts apply the statute of

limitations governing personal injury actions in the state where the injury took place." *Serino v. Hensley,* 735 F.3d 588, 590 (7th Cir. 2013). In Illinois, the statute of limitations period for Section 1983 claims is two years, and the claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13-202).

The two-year statute of limitations on many of the constitutional violations alleged in the Complaint expired well before Plaintiff filed this suit on July 11, 2013. (*See* Compl. ¶¶ 18-19, 32-33, 50(a)-(f).) Indeed, several of the alleged violations occurred decades earlier, dating all the way back to 1977. (*See id.* ¶¶ 18-19, 32, 50(a)-(f).) Plaintiff's claims based on these allegations are clearly time-barred.[3] The Court, therefore, dismisses Counts III-VI in full and Counts II and VIII to the extent they assert claims based on the conduct alleged in paragraphs 17-19 and 32-33 of the Complaint.

## II. The Moving Defendants' Motion to Transfer Venue

The Moving Defendants seek to transfer Plaintiff's remaining claims to the United States District Court for the Southern District of Illinois pursuant to 28 U.S.C. § 1404(a). (Defs. Mem. at 10-12.) Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it

---

[3] The continuing violation doctrine, which "allow[s] a suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought," cannot save Plaintiff's untimely claims. *See Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 801 (7th Cir. 2008). The doctrine "does not revive discrete injuries falling outside of the limitations period," such as the injuries alleged in paragraphs 18 and 32-33 of the Complaint. *See Watkins v. Chicago Hous. Auth.,* 527 Fed. App'x 504, 506 (7th Cir. 2013); *see also Heard v. Sheahan,* 253 F.3d 316, 319-20 (7th Cir. 2001). Furthermore, even if the continuing violation doctrine applies to Plaintiff's claims regarding his alleged continuing forced-medication, it does not delay the accrual of Counts IV-VI beyond the date that Plaintiff left Menard Correctional Center. *See Heard,* 352 F.3d at 318 (alleged constitutional violations continued "for as long as the defendants had the power to do something about [the plaintiff's] condition, which is to say until [the plaintiff] left the jail"); *see also Jervis v. Mitcheff,* 258 Fed. App'x 3, 5-6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided *or the inmate is released.*").

11

might have been brought . . . ." 28 U.S.C. § 1404(a). A transfer under § 1404(a) is appropriate if (1) venue is proper in both the transferor and transferee court,[4] (2) transfer is for the convenience of the parties and witnesses, and (3) transfer is in the interests of justice. *See Methode Elecs., Inc. v. Delphi Auto. Sys. LLC,* 639 F. Supp. 2d 903, 907 (N.D. Ill. 2009) (citations omitted)). District courts have substantial discretion in deciding motions for transfer. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 977-78 (7th Cir. 2010).

Courts look to a number of private and public factors in determining whether venue transfer will serve the convenience of the parties and witnesses and promote the interests of justice. *See Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.,* --- U.S. ---, 134 S. Ct. 568, 581 n.6 (2013); *Research Automation, Inc.,* 626 F.3d at 978. The private interests include (i) the relative ease of access to sources of proof, (ii) the availability of compulsory process for attendance of unwilling witnesses, (iii) the cost of obtaining attendance of willing witnesses, (iv) the location of material events, and (v) "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *See Atlantic Marine Constr. Co.,* 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)); *Research Automation, Inc.,* 626 F.3d at 978. Relevant public-interest factors include (i) docket congestion and likely speed to trial in the transferor and potential transferee courts, (ii) each court's relative familiarity with the relevant law, and (iii) the local

---

[4] In civil actions brought in federal court, venue is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*See* 28 U.S.C. § 1391(b).

12

interest in having localized controversies decided at home. *See Atlantic Marine Constr. Co.,* 134 S. Ct. at 581 n.6 (quoting *Piper Aircraft Co.,* 454 U.S. at 241 n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419); *Research Automation, Inc.,* 626 F.3d at 978. Additionally, courts must give some deference to the plaintiff's choice of forum. *See Atlantic Marine Constr.,* 134 S. Ct. at 561 n.6. The amount of deference courts give to the plaintiff's choice of forum lessens where the plaintiff's choice is not his home forum or bears little connection to the litigation. *See, e.g., Body Sci. LLC v. Boston Scientific Corp.,* 846 F. Supp. 2d 980, 992 (N.D. Ill. 2012); *Lewis v. Grote Inds., Inc.,* 841 F. Supp. 2d 1049, 1053 (N.D. Ill. 2012).

The Moving Defendants argue that the Court should transfer this case to the Southern District of Illinois because "the only arguable basis for filing this case in the Northern District of Illinois is the purported domicile of Defendants Godinez and Saddler" and Plaintiff's claims against those Defendants lack merit. (*See* Defs. Mem. at 11-12.) The Moving Defendants, however, do not identify Plaintiff's "home forum"[5] or the residences of the remaining Defendants. Furthermore, because the Moving Defendants have moved to transfer this case "for the convenience of parties and witnesses[] [and] in the interest of justice" pursuant to § 1404(a)—not because Plaintiff filed it in the wrong venue pursuant to 28 U.S.C. § 1406(a)— the Moving Defendants must address the private and public-interest factors relevant to determining whether transfer to the Southern District of Illinois is appropriate under § 1404(a). *See Research Automation, Inc.,* 626 F.3d at 978 (discussing factors). The Moving Defendants

---

[5] "[S]ince domicile is a voluntary status, a forcible change in a person's . . . residence does not alter his domicile; hence, the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." *Sullivan v. Freeman,* 944 F.2d 334, 337 (7th Cir. 1991); *see also Holmes v. U.S. Bd. of Parole,* 541 F.2d 1243, 1249-50 (7th Cir. 1976) ("We see no reason for purposes of venue under section 1391 to ascribe to [the defendant] the residence of his district of incarceration rather than the district of his domicile."), *overruled on other grounds by Arsberry v. Sielaff*, 586 F.2d 37 (7th Cir. 1978); *Grinnell Mut. Reins. Co. v. Ferando,* No. 09-3224, 2009 WL 4021 351, at *5 (C.D. Ill. Nov. 17, 2009) (similar).

bear the burden of proof on their motion to transfer. *See Ace Hardware Int'l Holdings, Ltd. v. Masso Expo Corp.,* No. 11-cv-3928, 2011 WL 5077686, at *5 (N.D. Ill. Oct. 25, 2011) (citing *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986)). The Moving Defendants have failed to meet this burden, and the Court, therefore, denies their motion to transfer venue without prejudice.

### III.  Plaintiff's Motion for Leave to Amend

On December 3, 2013, rather than respond to the Moving Defendants' motion to dismiss and transfer, Plaintiff moved for leave to file a proposed Amended Complaint. (R. 29.) Under Federal Rule of Civil Procedure 15(a)(2), a plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend should be 'freely give,' that does not mean it must always be given." *Hukic v. Aurora Loan Servs.,* 588 F.3d 420, 423 (7th Cir. 2009); *see also Crest Hill Land Dev., LLC v. City of Joliet,* 396 F.3d 801, 804 (7th Cir. 2005) (noting that despite the liberal nature of Rule 15(a), "leave to amend is not automatically granted"). District courts "'have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the [non-moving party], or where the amendment would be futile.'" *Hukic,* 588 F.3d at 432 (quoting *Arreola v. Godinez,* 546 F.3d 788, 796 (7th Cir. 2008)); *see also Independent Tr. Corp.,* 665 F.3d at 943 ("[I]t is well settled that a district court may refuse leave to amend where amendment would be futile."). An amendment is futile if the amended claims could not survive a motion to dismiss pursuant to Rule 12(b)(6). *See Arlin-Golf, LLC v. Village of Arlington Heights,* 631 F.3d 818, 822-23 (7th Cir. 2011).

Plaintiff's proposed Amended Complaint adds three additional defendants: the unknown superintendent, psychologist, and psychiatrist at the Elgin Mental Health Facility from 1990 through 1995. (*See* Mot. to Amend at Ex. 1, Proposed Am. Compl. ¶¶ 16-18.) Plaintiff alleges:

> [w]hile at the Elgin Mental Health Facility in or around 1990 to 1995, the plaintiff was misdiagnosed as being more dangerous than he in fact was. As a direct result of that misdiagnosis, [he] was sent to the Chester Mental Health Facility, a maximum security facility, where his maltreatment intensified. To this day, the plaintiff is subjected to demeaning treatment and abuse stemming from an incorrect initial diagnosis.

(*Id.* ¶¶ 24-25.) Based on these scant allegations, Plaintiff asserts Section 1983 claims for violation of his Eighth and Fourteenth Amendment rights against the three new defendants, in their individual and official capacities. (*Id.* ¶¶ 50(j)-(k), 78-83.) Plaintiff also adds the three new defendants to his claim for civil conspiracy (Count VIII) and asserts a claim against Elgin Mental Health Facility—which the proposed Amended Complaint fails to name as a defendant—for *respondeat superior* liability (Count XVI). Finally, Plaintiff amends his allegations against existing individual Defendants to include claims against them in their official capacities, as well as their individual capacities. (*Id.* ¶¶ 5-14, 18.)

Plaintiff's proposed amendments are futile. The two-year statute of limitations period has long run on Plaintiff's proposed claims against the unknown superintendent, psychologist, and psychiatrist at the Elgin Mental Health Facility from 1990-1995 (*see* Part I.E., *supra.*), and the Elgin Mental Health Facility is immune from suits for money damages under the Eleventh Amendment and not a "person" within the meaning of Section 1983. (*See* Part I.D., *supra.*) Furthermore, several Defendants against whom Plaintiff seeks to assert claims in their official, as well as their individual, capacities appear to have served as state officials during the relevant time period. It is well-settled that state officials acting in their official capacities are not "persons" amenable to suit under § 1983. *See Will,* 491 U.S. at 70-71, 109 S. Ct. 2304, 105 L.

15

Ed. 2d 45; *Joseph,* 432 F.3d at 748. The Court, therefore, denies Plaintiff's motion for leave to file the proposed Amended Complaint.

## IV. Plaintiff's Motion for Relocation

Plaintiff moves for the Court to order the IDHS to relocate him to a facility near Chicago pending the outcome of this litigation. (Mot. to Relocate at 1.) In support of his motion, Plaintiff argues that because some Defendants in this case are responsible for his care at Chester Mental Health Facility, his continued residence at the facility leaves him vulnerable to increased abuse by those Defendants and that his medical care at the facility might be compromised because those Defendants cannot speak to him except through his attorney. (*Id.*) Plaintiff also claims that his continued residence at Chester Mental Health Facility may harm him in this litigation because he might inadvertently reveal information that undercuts his case to Defendants and because the facility's location near the southern border of Illinois limits his access to his attorney in Chicago. (*Id.* at 1-2.)

The IDHS opposes Plaintiff's motion for relocation. In its brief, the IDHS provides the following information regarding Plaintiff's criminal and mental health background:

> On April 7, 1992, [Plaintiff] was readmitted to Elgin Mental Health Center as unfit to stand trial on the charge of Attempted Murder. While hospitalized there, he sexually assaulted a nurse precipitating his transfer to Chester Mental Health Center on June 21, 1992. Plaintiff was subsequently charged with Aggravated Criminal Sexual Assault. The Attempted Murder charge was resolved before the sexual assault charge. With treatment provided, Plaintiff was recommended to return to Cook County Court as fit for trial for Attempted Murder. Plaintiff was found guilty, and sent to Menard Correctional Center with a life sentence. While in the Department of Corrections serving his life sentence for Attempted Murder, Plaintiff was tried for Aggravated Criminal Assault. He was transferred to the Kane County Jail to stand trial. While in Kane County, Plaintiff was determined to be unfit to stand trial, and was transferred to Chester Mental Health Center . . . because of his violent, uncooperative, hostile and threatening demeanor while in the county jail. He was ultimately determined to be not guilty by reason of insanity on August 29, 1996. [Plaintiff] continues to ruminate about his attack on the nurse in Elgin [Mental Health Center].

16

(R. 18, IDHS Resp. Br. at 2-3 (citations omitted).)[6]

Plaintiff's treatment team at the Chester Mental Health Facility evaluates Plaintiff on a monthly basis to determine his readiness to transfer from maximum to medium security. Due to Plaintiff's history of aggressive behavior, Plaintiff must meet certain criteria for one year before his treatment team will consider recommending him for transfer to a less restrictive facility:

> He must exhibit an ability to inhibit any significant impulses of violence toward himself or others including any inappropriate sexual stalking behaviors. He must express a genuine desire for transfer, to be cooperative in his adjustments as exhibited by his statements, the taking of medications deemed as essential, and the making of reasonable plans.

(R. 18-2, Treatment Plan Review at 13.) The last time Plaintiff's treatment team recommended him for transfer was in April 2012. (*Id.*) In June 2012, an IDHS forensic expert, who was not a member of Plaintiff's treatment team or an employee of Chester Mental Health Facility, performed an independent risk assessment and decided not to transfer Plaintiff to a medium security facility at that time. (*Id.*) According to Plaintiff's Treatment Plan Review, Plaintiff has not met the criteria for transfer since his risk assessment in June 2012. (*Id.*) As of September 16, 2013—the date of Plaintiff's most recent Treatment Review at the time the IDHS filed its response brief—Plaintiff "was last in seclusion on 6/28/13 and in [r]estraints on 07/24/13." (*Id.*) Plaintiff's treatment team did not recommend Plaintiff for transfer during his September 16, 2013 Treatment Plan Review.

Plaintiff argues that the IDHS should have transferred him to the Elgin Mental Health Facility in May 2012 when his treatment team recommended him for transfer to a less restrictive facility. (Mot. to Relocate at 2.) Plaintiff, however, offers no reason for the Court to question the IDHS expert's clinical determination denying Plaintiff's request for transfer. Indeed,

---

[6] The Court considers these uncontroverted facts only with respect to Plaintiff's motion for relocation.

Plaintiff's continued failure to meet the criteria for transfer since his June 2012 risk assessment supports the IDHS expert's determination that Plaintiff was not ready for transfer to a less restrictive facility. The IDHS must balance Plaintiff's desire to transfer to a less restrictive facility with its responsibility to protect the safety of the staff and other patients at the Elgin Mental Health Facility and other Illinois facilities. Under the circumstances, the Court will not substitute its judgment for the judgment of the IDHS's trained expert and the professionals on Plaintiff's treatment team who are more familiar with Plaintiff's medical conditions and history of aggressive behavior and who, in the latter case, evaluate Plaintiff in person on a monthly basis. *Cf. Whitley v. Albers,* 475 U.S. 312, 321-22, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) ("Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . . It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice."); *Parham v. J.R.,* 442 U.S. 584, 609, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979) ("Common human experience and scholarly opinions suggest that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may be more illusory than real.").

Furthermore, Plaintiff's argument that the Court should relocate him to Chicago to facilitate his access to counsel is unpersuasive. An incarcerated individual has a constitutional right of access to the courts, which includes the opportunity to confer confidentially with his counsel. *See Stone v. Morris,* 546 F.2d 730, 735 (7th Cir. 1976). That right, however, does not mean that the State must facilitate in-person meetings between an incarcerated individual and his

counsel or relocate the individual to a facility near his counsel. *See Ivey v. Harney,* 47 F.3d 181, 186 (7th Cir. 1995) ("[Although] Ivey could prosecute this litigation better if he were a free man, or if he were imprisoned in Chicago rather than Taylorville, . . . that reality does not make him free, require his relocation to the prison most favorably situated to his pending litigation, or compel his custodian to act as his chauffeur. Lawful incarceration curtails many opportunities." (citing *Thornburgh v. Abbott,* 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989)); *see also Stone,* 546 F.2d at 735 ("As long as the inmate and his counsel are afforded adequate opportunity to confer confidentially and to petition the courts about matters in controversy, the right of access is satisfied.").

Plaintiff complains that he must have the opportunity to meet with his counsel in person because "telephone access is tightly controlled by the [Chester Mental Health Facility], making attorney call security uncertain." (Mot. to Relocate at 1-2.) Plaintiff, however, provides no evidence—only uncorroborated speculation—that employees of Chester Mental Health Facility are eavesdropping on his telephone conversations with counsel. The record before the Court suggests that Plaintiff's alleged lack of access to his counsel is of Plaintiff's own making. Plaintiff chose to file this suit in the Northern District of Illinois, and Plaintiff selected counsel located hundreds of miles away from Chester Mental Health Facility to represent him in this suit. Without evidence that employees of Chester Mental Health Facility are interfering with his access to counsel, the Court cannot spare Plaintiff from the inconvenience that his own choices created. Furthermore, even if Plaintiff comes forward with evidence that employees of Chester Mental Health Facility are interfering with Plaintiff's access to counsel, Plaintiff fails to explain why less drastic measures—ones that do not require overriding the professional judgment of IDHS experts and Plaintiff's treatment team and potentially jeopardizing the safety of the staff

19

and other patients at Elgin Mental Health Facility—could not address Plaintiff's concerns. The Court, therefore, denies Plaintiff's motion for relocation.

## CONCLUSION

For the reasons explained above, the Court grants the Moving Defendants' motion to dismiss, in part with prejudice and in part without prejudice. The Court dismisses (i) Counts III-VII and IX-XIV, in full, with prejudice; (ii) Counts II and VIII, with prejudice, to the extent they rely on allegations falling outside the two-year statute of limitations period; and (iii) Count VIII, without prejudice, to the extent it asserts a § 1983 conspiracy claim against Defendant Saddler. The Court denies without prejudice the Moving Defendants' motion to transfer venue. Additionally, the Court denies Plaintiff's motion for leave to amend and his motion for relocation.

**DATED: February 14, 2014**                    **ENTERED**

_____
AMY J. ST. EVE
U.S. District Court Judge

20